UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
JOSEPH COMBLO,

                Plaintiff,

      -against-

EDWARD FLYNN, individually, ROBERT
HOLLAND, individually, JAMES GAFFNEY,
individually, KATHLEEN SAVOLT,
individually, THOMAS A. MURPHY
individually, TONI PERGOLA RYAN,
individually, JOHN M. HOFSTETTER,
individually, RANDI ROBINOWITZ,
individually, and the VILLAGE OF
MAMARONECK, New York,

                Defendants.
------------------------------------------------------------x

JUDGE KARAS
08 Civ. (    )

COMPLAINT

Jury Trial Demanded

08 CIV. 5524

      Plaintiff JOSEPH COMBLO, by his attorney Jonathan Lovett, Esq., for his complaint respectfully states:

## NATURE OF THE ACTION

      1. This is an action for compensatory and punitive damages, proximately resulting from conduct engaged in by Defendants while acting under color of New York State law, for violations of Plaintiff's rights as guaranteed by the Fourteenth Amendment to the United States Constitution.

## JURISDICTION

      2. The Court's jurisdiction is invoked pursuant to 28 U.S.C. §1331, 1343. Plaintiff's supplemental state law claim sounding in defamation is interposed in

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
[FIL]ED: _____

1

accordance with 28 U.S.C. §1367. With respect to the supplemental claim, on March 21, 2008, the defamatory publication at issue was made. On March 28, 2008, Plaintiff duly filed with the Village of Mamaroneck a notice of claim as required by the New York State General Municipal Law. More than thirty days have elapsed since that filing and, notwithstanding the conduct of a hearing on the notice, the claim remains unadjusted and/or unresolved.

## THE PARTIES

3. Plaintiff JOSEPH COMBLO is a citizen of the United States, a domiciliary of the State of New York, and a resident of the Northern Counties. At all times relevant to this complaint, except as otherwise expressly indicated, he was employed as a sworn member of the Village of Mamaroneck Police Department. Other than with respect to the defamatory slur, referenced *infra*, his record during the course of his two decade plus employment was impeccable.

4. Defendant EDWARD FLYNN (hereinafter "Flynn"), who is sued in his individual and personal capacities only, at all times relevant to this complaint was the duly appointed Chief of Police of the Defendant Village. Flynn, to his co-defendants actual knowledge, has repeatedly and intentionally violated the federal civil and state law rights of police officers under his command, most recently the rights of four officers in Skehan v. Flynn, 465 F.3d 96, (2d Cir. 2006), a case that resulted in pecuniary losses to the Village of in excess of $2,000,000 (hereinafter "Flynn's civil rights violations").

5. Defendant ROBERT HOLLAND (hereinafter "Holland"), who is sued in his individual and personal capacities only, at all times relevant to this complaint was

2

employed as a Detective Sergeant in the Village's Police Department. As such he has, for a substantial period of time, had responsibility for and access to the departmental evidence safe in which money, drugs and other contraband are stored. Holland was and continues to be an active participant in Flynn's civil rights violations.

6. Defendant JAMES GAFFNEY (hereinafter "Gaffney"), who is sued in his individual and personal capacities only, at all times relevant to this complaint was employed as a Lieutenant in the Village's Police Department. With respect to the supposed investigation of a theft of money from the Department's evidence safe referenced *infra*, Gaffney routinely provided information to the media on Flynn and Holland's behalf. Gaffney was and continues to be an active participant in Flynn's civil rights violations.

7. Defendant KATHLEEN SAVOLT (hereinafter "Savolt"), who is sued in her individual and personal capacities only, at all times relevant to this complaint was the duly elected Mayor of the Defendant Village. As such she is a member of the Village Board of Police Commissioners which, under New York State law, bears ultimate responsibility for the administration of the Village Police Department and, amongst other things, the conduct and/or misconduct of its Chief of Police.

8. Defendants THOMAS A. MURPHY, TONI PERGOLA RYAN, JOHN M HOFSTETTER and RANDI ROBINOWITZ, each of whom is sued in his/her individual and personal capacities only (hereinafter along with Savolt, collectively referred to as the "Board"), are the duly elected Trustees of the Defendant Village and as such are also members of the Board of Police Commissioners. Fully aware of Flynn's civil rights violations prior to March 21, 2008, the Board intentionally and/or recklessly took no

3

action whatsoever to either remove Flynn from office and/or otherwise prohibit him from prospectively violating the federal civil rights and/or state law rights of other sworn members of the Village's Police Department. As a proximate result Flynn, Gaffney, and Holland's violation of Plaintiff's rights occurred as set forth *infra.*

9. Defendant VILLAGE OF MAMARONECK, New York (hereinafter "Village"), is a municipal corporate subdivision of the State of New York, duly existing by reason of and pursuant to the laws of said State.

### THE FACTS

10. Following a lengthy, unblemished employment by the Village's Police Department, Plaintiff on March 14, 2008, filed for retirement as a Detective, a circumstance he that day reported to Gaffney, who in turn so advised Flynn. As a result Flynn, who shared information regarding Plaintiff's retirement application with Holland, knew that Plaintiff's employment with the Village would cease within a matter of days.

11. For that very reason - - and believing that they could with impunity tarnish Plaintiff's reputation as his career with the Department ended - - on March 21, 2008, Flynn, Gaffney and Holland published to Gannett Suburban Newspapers and "News 12 Westchester" copies of disciplinary charges (required by state law to be kept confidential and non-public) that Holland and Gaffney had fabricated and Flynn - - knowing the charges were false - - signed. Flynn then immediately suspended Plaintiff from duty without pay.

12. The false charges as published to the media recited in material respect:

"Specification 1: Some time prior to January 11, 2008, without

4

authorization, you removed approximately $23,383.40 in United States currency (the 'Currency') from the evidence safe (the 'Department Evidence Safe') maintained by the Village Police Department (the 'Department') at Department headquarters located at 169 Mt. Pleasant Avenue, Mamaroneck, N.Y...

Specification 2: Some time prior to January 11, 2008, without authorization, you removed the Currency from the Department Evidence Safe...

Specification 3: Some time prior to January 11, 2008, without authorization, you appropriated for personal use the Currency stored in the Department Evidence Safe...

Specification 4: Some time prior to January 11, 2008, without authorization you appropriated for personal use the Currency stored in the Department Evidence Safe...

Specification 5: In an interview (the 'Police Chief Interview') conducted by the Chief of Police of the Department ('Police Chief') on March 5, 2008[,] regarding the disappearance of the Currency from the Department Evidence Safe, you failed in your obligation to provide true, accurate and thorough responses to the questions posed to you by the Chief of Police...

Specification 6: In the Police Chief Interview, you failed in your obligation to provide true, accurate and thorough responses to the questions posed to you by the Police Chief...

5

<u>Specification 7</u>: In the Police Chief Interview, you failed in your obligation to provide true, accurate, and thorough responses to the questions posed to you by the Police Chief. . .

<u>Specification 8</u>: You provided false answers to the questions posed you by the Police Chief at the Police Chief Interview. . .

<u>Specification 9</u>: You provided false answers to the questions posed to you by the Police Chief at the Police Chief Interview. . .

<u>Specification 10</u>: You provided false answers to the questions posed to you by the Police Chief at the Police Chief Interview. . .

<u>Specification 11</u>: In a polygraph examination. . .conducted by an agent. . .of the Police Chief on March 6, 2008[,] regarding the disappearance of the Currency from the Department Evidence Safe, you failed in your obligation to provide true, accurate and thorough responses to questions posed to you. . .

<u>Specification 12</u>: In the Polygraph Examination, you failed in your obligation to provide true, accurate and thorough responses to the questions posed to you by the Police Chief's Agent. . .

<u>Specification 13</u>: In the Polygraph Examination, you failed in your obligation to provide true, accurate, and thorough responses to the questions posed to you by the Police Chief's Agent. . .

<u>Specification 14</u>: You provided false answers to the questions posed to you by the Police Chief's Agent in the Polygraph Examination. . .

<u>Specification 15</u>: You provided false answers to the questions posed to

6

you by the Police Chief's Agent in the Polygraph Examination...

Specification 16: You provided false answers to the questions posed to you by the Police Chief's Agent in the Polygraph Examination...

Specification 17: On March 7, 2008, you were directed...to provide to the Department by the close of business on March 10, 2008, the following information: 'Any and all medical reports, records and documents in your possession...regarding the heart condition, the diabetes condition and/or any other medical condition you believe is relevant to the Department's investigation of this matter.' You failed to provide the information as directed...

Specification 18: You failed to provide the information sought in the Written Directive by the close of business on March 10, 2008...

Specification 19: You failed to provide the information sought in the written Directive by the close of business on March 10, 2008...

Specification 20: During the period January 11, 2008[,] through March 6, 2008, on more than one occasion you provided false information to you immediate supervisor about your role in the disappearance of the Currency from the Department Evidence Safe...

Specification 21: During the period January 11, 2008[,] through March 6, 2008, on more than one occasion you provide[d] false information to your immediate supervisor about your role in the disappearance of the currency from the Department Evidence Safe...

Specification 22: During the period January 11, 2008[,] to March

6, 2008, on more than one occasion you provide[d] false information to your immediate supervisor about your role in the disappearance of the Currency from the Department Evidence Safe. . .

Specification 23: During the period January 11, 2008[,] through March 6, 2008, on more than one occasion you lied to your immediate supervisor about your role in the disappearance of the Currency from the Department Evidence Safe. . .

Specification 24: During the period January 11, 2008[,] thorough March 6, 2008, on more than once occasion you gave to another member of the Department information of an official nature known to you to be false or misleading. . .

Specification 25: During the period January 11, 2008[,] through March 6, 2008, on more than one occasion you gave to another member of the Department information of an official nature known by you to be false or misleading. . ."

A copy of the disciplinary charges is annexed hereto and incorporated by reference herein.

    13. Each of the statements of supposed fact referenced in the disciplinary charges quoted in the preceding paragraph "12" was:

        i) absolutely, completely and in every respect materially false;

        ii) knowingly and intentionally uttered by Flynn, Gaffney, and Holland in calculated and/or reckless disregard for the truth;

        iii) published by them without benefit of any privilege/authorization;

8

iv) intended by them to impute to Plaintiff serious criminal wrong-doing, the commission of a felony, unfitness to engage in the law enforcement profession, and dishonesty;

v) intended by Flynn, Gaffney and Holland to expose Plaintiff to public contempt, ridicule, aversion, disgrace and/or to induce an evil opinion of Plaintiff in the minds of right-thinking persons and to deprive Plaintiff of their friendly intercourse in society, and,

vi) intended by Flynn, Gaffney, and Holland to prevent Plaintiff from prospectively being employed in any professional law enforcement and/or security related business because he had been publicly denounced as a thief, a corrupt law enforcement officer, and a felon.

14. As a proximate result of Flynn, Gaffney, and Holland's publication of the disciplinary charges, their false allegations of fact were re-published by both News 12 Westchester and Gannett Suburban Newspapers. In the latter's story, it was reported *inter alia*:

### "COP ACCUSED OF STEALING MONEY

A veteran village detective is facing disciplinary charges, alleged to have taken $23,000 from a safe at police headquarters, according to documents obtained by The Journal News.

In a notice of discipline served to [*sic*.] Detective Joseph Comblo on Thursday, the Police Department charged him with 25 code-of-conduct violations. He is accused of removing about $23,400 from the safe sometime before Jan. 11, using it for personal spending and lying

9

to investigators, according to the eight-page document signed by Chief Flynn...".

15. Following the news media's publications, referenced in the preceding paragraph "14", a copy of the disciplinary charges was first sent by Flynn to Plaintiff

16. Thereafter a hearing on the charges was scheduled but then summarily cancelled by Flynn on a pretext that his "star" witness was not available.

17. On June 13, 2008, according to a press release issued by Savolt on behalf of the Board to Gannett Suburban Newspapers and News 12 Westchester:

> "The Board of Trustees of the Village of Mamaroneck has just been informed that Police Chief Edward E. Flynn is dropping all charges against former Detective Joseph Comblo."

In that connection Savolt, on behalf of the Board, falsely reported to the media that the disciplinary charges were being dropped only by reason of a technical, supposed jurisdictional defect. As a result that publication by Savolt was intended to ratify the false allegations of fact in the disciplinary charges and give the public the false impression that the defamatory allegations contained in the disciplinary charges were true.

18. As a proximate result of: i) the Board's failure to timely take action against Flynn (*see* paragraph "8", *supra*); ii) Flynn, Gaffney, and Holland's unlawful publication of the stigmatizing disciplinary charges; iii) Flynn's cancellation of the disciplinary hearing; Flynn and the Board's abandonment of the disciplinary charges; and iv) Savolt's false report to the media that the charges were dropped only by reason of a technical defect, Plaintiff has been caused to suffer: gross and irreparable impairment of his professional and personal reputations; *per se* defamation; an unjustified permanent

10

impediment to his securing future employment in a professional law enforcement related position; an unjustified permanent impediment to his securing future employment in a professional security related job position; an unjustified permanent impediment to his obtaining any future employment involving trust, honesty and/or integrity; public humiliation; public embarrassment; public degradation; public shame; emotional upset; anxiety; pecuniary losses; and he has otherwise been rendered sick and sore.

### AS AND FOR A FIRST CLAIM

19. Repeats and realleges as if fully set forth the allegations of fact contained in paragraphs "1" to "18", inclusive.

20. Defendant's stigma-plus conduct violated Plaintiff's right to Liberty as guaranteed him by reason of the Fourteenth Amendment to the United States Constitution, 42 U.S.C. §1983.

### AS AND FOR A SECOND CLAIM

21. Repeats and realleges as if fully set forth the allegations of fact contained in paragraphs "1" to "18", inclusive.

22. Defendants' conduct constitutes *per se* defamation actionable under New York State's common law for damages.

WHEREFORE a judgment is respectfully demanded:

    a. Awarding against the individually named Defendants on the First Claim such compensatory and punitive damages as the jury may determine,

b. Awarding against the Defendant Village on the First Claim such compensatory damages as the jury may determine,

c. Awarding against all Defendants on the Second Claim such compensatory damages as the jury may determine,

d. Awarding on the First Claim reasonable attorney's fees and costs, and,

e. Granting such other and further relief as to the Court seems just and proper.

Dated: White Plains, N.Y.
June 17, 2008

Jonathan Lovett (4854)
Attorney for Plaintiff
222 Bloomingdale Road
White Plains, N.Y. 10605
914-428-8401

# VILLAGE of MAMARONECK POLICE DEPARTMENT

*Chief Edward E. Flynn*

### NOTICE OF DISCIPLINE

March 21, 2008

VIA PERSONAL SERVICE,
REGULAR U.S. MAIL,
AND CERTIFIED MAIL,
RETURN RECEIPT REQUESTED

Mr. Joseph Comblo
13 North Brook Rd.
Larchmont, N.Y. 10538

Dear Mr. Comblo:

    In accordance with the provisions of New York Unconsolidated Law Section 5711-q, the Rules and Regulations Governing the Police Department of the Village of Mamaroneck, New York (the "Police Department Rules"), the Rules and Regulations for Employees of the Village of Mamaroneck, New York (the "Employee Rules"; the Police Department Rules and the Employee Rules from time to time herein referred to collectively as the "Rules") and Article XXVI of the collective bargaining agreement between the Police Benevolent Association of the Village of Mamaroneck and the Village of Mamaroneck (the "Village"), you are hereby notified that you are charged with acts of misconduct, insubordination, and rule violation as set forth below.

### VIOLATION OF POLICE DEPARTMENT RULES AND EMPLOYEE RULES

You have violated the following provisions of the Police Department Rules:

RULES AND REGULATIONS
GOVERNING
THE POLICE DEPARTMENT
OF
THE VILLAGE OF MAMARONECK,
NEW YORK

\*      \*      \*

Specification 11: In a polygraph examination (the "Polygraph Examination") conducted by an agent (the "Police Chief's Agent") of the Police Chief on March 6, 2008 regarding the disappearance of the Currency from the Department Evidence Safe, you failed in your obligation to provide true, accurate, and thorough responses to the questions posed to you. This action constitutes a violation of the Rules.

Specification 12: In the Polygraph Examination, you failed in your obligation to provide true, accurate and thorough responses to the questions posed to you by the Police Chief's Agent. This action constitutes misconduct.

Specification 13: In the Polygraph Examination, you failed in your obligation to provide true, accurate, and thorough responses to the questions posed to you by the Police Chief's Agent. This action constitutes insubordination.

Specification 14: You provided false answers to the questions posed to you by the Police Chief's Agent in the Polygraph Examination. This action constitutes a violation of the Rules.

Specification 15: You provided false answers to the questions posed to you by the Police Chief's Agent in the Polygraph Examination. This action constitutes misconduct.

Specification 16: You provided false answers to the questions posed to you by the Police Chief's Agent in the Polygraph Examination. This action constitutes insubordination.

Specification 17: On March 7, 2008, you were directed in a written directive (the "Written Directive") to provide to the Department by the close of business on March 10, 2008, the following information: "Any and all medical reports, records, and documents in your possession at home or at work regarding the heart condition, the diabetes condition and /or any other medical condition you believe is relevant to the Department's investigation of this matter." You failed to provide the information as directed. Such failure constitutes a violation of the Rules.

Specification 18: You failed to provide the information sought in the Written Directive by the close of business on March 10, 2008. Such failure constitutes misconduct.

Specification 19: You failed to provide the information sought in the Written Directive by the close of business on March 10, 2008. Such failure constitutes insubordination.

Specification 20: During the period January 11, 2008 through March 6, 2008, on more than one occasion you provide false information to your immediate supervisor about your role in the disappearance of the Currency from the Department Evidence Safe. This action constitutes a violation of the Rules.

Specification 21: During the period January 11, 2008 through March 6, 2008, on more than one occasion you provide false information to your immediate supervisor about your role in the disappearance of the currency from the Department Evidence Safe. This action constitutes a violation of the Rules.

Specification 22: During the period January 11, 2008 through March 6, 2008, on more than one occasion you provide false information to your immediate supervisor about your role in the disappearance of the Currency from the Department Evidence Safe. This action constitutes misconduct.

Specification 23: During the period January 11, 2008 through March 6, 2008, on more than one occasion you lied to your immediate supervisor about your role in the disappearance of the Currency from the Department Evidence Safe. This action constitutes a violation of the Rules.

Specification 24: During the period January 11, 2008 through March 6, 2008, on more than one occasion you gave to another member of the Department information of an official nature known by you to be false or misleading. This action constitutes insubordination.

Specification 25: During the period January 11, 2008 through March 6, 2008, on more than one occasion you gave to another member of the Department information of an official nature known by you to be false or misleading. This action constitutes insubordination.

You are allowed until March 31, 2008 to make and file your answer in writing to these disciplinary charges. Such answer should reach the undersigned at Village of Mamaroneck Police Headquarters, 169 Mount Pleasant Ave., Mamaroneck, New York 10543, on or before 4:00 p.m. on March 31, 2008.

You are entitled to a public hearing on the above charges and to be represented by counsel at any such hearing. You should be prepared at such hearing to present witnesses and such other proof that you may have in your defense against these disciplinary charges. You will be notified of the date, time and location of the hearing.

The Department intends to seek to impose the penalty of dismissal if you are found guilty of any of the above charges. The other disciplinary penalty that may be imposed consists of:

**Reprimand; and/or**

**Forfeiture and the withholding of salary or compensation for a specified time not exceeding twenty days and the withholding of salary or compensation during such suspension.**

Case 7:08-cv-05524-KMK    Document 1    Filed 06/19/2008    Page 16 of 16

# Cop accused of stealing money

## Mamaroneck officer faces disciplinary action in $23G theft

**Theresa Juva**
*The Journal News*

MAMARONECK — A veteran village detective is facing disciplinary charges, alleged to have taken $23,000 from a safe at police headquarters, according to documents obtained by The Journal News.

In a notice of discipline served to Detective Joseph Comblo on Thursday, the Police Department charges him with 25 code-of-conduct violations. He is accused of removing about $23,400 from the safe sometime before Jan. 11, using it for personal spending and lying to investigators when questioned, according to the eight-page document signed by Chief Edward Flynn.

Flynn announced at a Board of Trustees meeting Feb. 25 that the department was investigating the theft of money from a safe on the second floor of headquarters, at 169 Mount Pleasant Ave.

The longtime detective and youth officer is not facing criminal charges. Comblo joined the force in 1983 and has received recognition for perfect attendance and assisting in several high-profile arrests.

Comblo was suspended without pay March 14, the same day he filed retirement papers, police said last week.

No one answered the door at his Larchmont home Friday or Saturday.

He allegedly failed a polygraph test March 6 and failed to comply with an order to provide documentation of a medical condition, according to the charges.

Andrew Quinn, an attorney for the village Police Benevolent Association, said he could not comment on the charges.

When reached by phone Friday, Mamaroneck Mayor Kathy Savolt said she "can't comment on personnel matters at all." She declined to comment on whether criminal charges would be pursued, but did say there was "an open police investigation."

Comblo has until March 31 to respond to the charges and is entitled to a hearing in front of the Board of Trustees, which would sit as the Board of Police Commissioners.

At the hearing, which could be open or closed, according to Comblo's wishes, he would be required to provide evidence against the disciplinary charges.

Comblo could be dismissed or forced to forfeit his last month's pay if found guilty, according to the notice. He is scheduled to retire next month.

Randolph McLaughlin, a Pace University law professor, said criminal charges required a higher standard of evidence than department charges. A polygraph test could not be used as evidence in a criminal proceeding, so financial records, witness accounts and circumstantial evidence would be needed to build such a case, he said.

"D.A. offices are historically reluctant to prosecute police officers unless they have a slam-dunk case," McLaughlin said, adding that district attorneys were hesitant to jeopardize relationships with police departments without full confidence in a case.

A spokesman for the Westchester County District Attorney's Office said the office was not actively involved in the investigation of the missing money.

Emily DeSantis, spokeswoman for state Comptroller Thomas DiNapoli, said Comblo was not in danger of losing his pension.

"His benefit is guaranteed by the state constitution," she said.

*Reach Theresa Juva at tjuva@lohud.com or 914-694-5012.*

## Peekskill raises taxes, spends $500,000 surplus

### 5.25% rate increase needed to add 4 jobs, councilman says

**Brian J. Howard**
*The Journal News*

PEEKSKILL — Critics are angry over changes to the 2008 budget that will raise taxes 5.25 percent and reduce the city surplus by $500,000.

But backers say those changes are needed to pay for two additional police officers and a firefighter and to restore the post of economic development officer.



Don Bennett Jr.    Cathy Pisani

crease over the prior year, the third straight budget without one. Since then, majority control of the Common Council has shifted from Republican to Democrat.

A public hearing was held Jan. 28 and the $46.3 million amended

cent increase," said Councilwoman Cathy Pisani, who voted against the amended budget.

Pisani is the lone Republican on the council, following a Democratic sweep in the fall elections.

Homeowners will now pay $213.19 per $1,000 of assessed property value, up from last year's tax rate of $202.56.

"We need to protect our city and you can't do that when you're short-staffed," said Councilman Don Bennett Jr., who voted no on the original budget.

Bennett said he opposed appropriating $518,000 from the city's fund balance — a reserve for un-

Municipalities commonly alter spending during the course of a year as revenues and expenses vary, but it is rare to amend a budget once it has been adopted.

Besides the $264,000 for new police and fire personnel, the council voted to increase ambulance corps spending by $26,000 and to set aside $103,000 for salary and benefits for an economic development officer, the city's first in four years. A $240,000 transfer to the city's capital budget for technological equipment was also cut.

Fire Chief John Pappas said it would take until December to hire and train a fire academy graduate.

happy to get more men," he said.

Chapel Hill resident Diane Wisla, a member of the city's Republican Committee who is no longer active, said she only recently learned of the tax increase. She said it would be a burden, particularly with other rising costs, like common charges at her townhouse development.

"I did think it was a done deal and a settled issue," Wisla said of the budget. "And I was so surprised that this tax increase was coming, especially the way the economy is and in Westchester, especially."